UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN LEMP, individually and on behalf of all others similarly situated, | No. 2:18-cv-01313-TLN-KJN |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS** |
| SETERUS, INC., | |
| Defendant. | |

This matter is before the Court on Plaintiff Martin Lemp's ("Plaintiff") Motion to Certify Class.  (ECF No. 50.)  Defendant Seterus, Inc. ("Defendant") opposed Plaintiff's motion.  (ECF No. 54.)  Plaintiff replied.  (ECF No. 56.)  For the reasons set forth below, the Court DENIES Plaintiff's motion.  (ECF No. 50).

///

///

///

///

///

///

///

///

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff alleges Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Rosenthal Fair Debt Collections Practices Act ("Rosenthal Act"), California Civil Code § 1788, for charging "unlawful convenience fees" for payments made online or by phone.  (ECF No. 51 at 5.)  Plaintiff alleges Defendant is a mortgage servicer and has provided services for Plaintiff's loan.  (*Id.* at 7, 10.)  Defendant charged Plaintiff a convenience fee for paying his mortgage online or by phone.  (*Id.* at 10.)  Plaintiff seeks to certify the following nationwide class under the FDCPA:

> All individuals in the United States, who, during the applicable limitations period, paid a convenience fee to Seterus for paying over the phone or online in connection with any residential mortgage loan, where the term "convenience fee" was not specifically enumerated in the original agreement and where Defendant's records indicate that the debt had not been current for 30 or more consecutive days at the time Defendant began servicing it.  All employees of the Court and Plaintiff's counsel are excluded from this class.

(*Id.* at 10–11.)  Plaintiff also seeks to certify the following statewide class under the Rosenthal Act:

> All individuals in the state of California, who, during the applicable limitations period, paid a convenience fee to Seterus for paying over the phone or online in connection with any residential mortgage loan owned or serviced by Seterus.  All employees of the Court and Plaintiff's counsel are excluded from this subclass.

(*Id.* at 11.)

Plaintiff filed the instant action on May 21, 2018.  (ECF No. 1.)  Plaintiff filed the operative Second Amended Complaint ("SAC") on February 4, 2020, which alleges violations under the FDCPA and Rosenthal Act for charging unlawful debt collection fees.  (ECF No. 42.)  On October 15, 2020, Plaintiff filed his motion to certify class pursuant to Federal Rule of Civil Procedure ("Rule") 23.  (ECF No. 50.)  Defendant filed an opposition to the motion on October 29, 2020.  (ECF No. 54.)  Plaintiff filed a reply on November 5, 2020.  (ECF No. 56.)

---

[1]     The following recitation of facts is taken, sometimes verbatim, from the instant motion. (ECF No. 51.)

1

## II.   STANDARD OF LAW

2       Class certification is governed by Rule 23.  *See* Fed. R. Civ. P. 23.  "Parties seeking class

3   certification bear the burden of demonstrating that they have met each of the four requirements of

4   [Rule] 23(a) and at least one of the requirements of Rule 23(b)."  *Ellis v. Costco Wholesale Corp.*,

5   657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180,

6   1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).  Under Rule 23(a), the party

7   seeking certification must establish:

8               (1) the class is so numerous that joinder of all members is
            impracticable; (2) there are questions of law or fact common to the
9           class; (3) the claims or defenses of representative parties are typical
            of the claims or defenses of the class; and (4) the representative
10          parties will fairly and adequately protect the interests of the class.

11   Fed. R. Civ. P. 23(a).  "These requirements effectively 'limit the class claims to those fairly

12   encompassed by the named plaintiff's claims.'"  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

13   156 (1982) (quoting *Gen. Tel. Co. of Nw. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).

14       In addition to satisfying the requirements under Rule 23(a), the party seeking certification

15   must also fulfill the requirements under either Rule 23(b)(1), 23(b)(2), or 23(b)(3).  Fed. R. Civ.

16   P. 23(b).  Where, as here, the plaintiff seeks certification under Rule 23(b)(3)[2], the plaintiff must

17   establish "that the questions of law or fact common to class members predominate over any

18   questions affecting only individual members, and that a class action is superior to other available

19   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see*

20   *Zinser*, 253 F.3d at 1186.  In evaluating predominance and superiority, courts consider four

21   factors: "(A) the class members' interests in individually controlling the prosecution or defense of

22   separate actions; (B) the extent and nature of any litigation concerning the controversy already

23   commenced by or against class members; (C) the desirability or undesirability of concentrating

24   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

25   class action."  Fed. R. Civ. P. 23(b)(3).

26   ///

27

28   _____
     [2]     Plaintiff withdrew his request for certification pursuant to Rule 23(b)(2) and seeks
     certification solely on the basis of Rule 23(b)(3).  (ECF No. 56 at 13.)

1

### III.   ANALYSIS

2       Plaintiff argues that all of the requirements of Rule 23(a) and (b)(3) are satisfied for the

3   putative classes.  (*See* ECF No. 51.)  In opposition, Defendant asserts: (1) Plaintiff fails to

4   establish commonality under Rule 23(a) and predominance under Rule 23(b)(3); (2) a class action

5   is not superior to individual lawsuits under Rule 23(b)(3); (3) Plaintiff cannot prove typicality

6   under Rule 23(a)(3); and (4) the FDCPA and Rosenthal Act do not permit declaratory relief,

7   precluding certification under Rule 23(b)(2).  (*See* ECF No. 54.)

8       Courts often consider predominance and commonality together.  *See*, *e.g.*, *Just Film Inc.*

9   *v. Buono*, 847 F.3d 1108, 1120–22 (9th Cir. 2017); *Morandi v. Nationstar Mortg., LLC*, No. 2:19-

10   cv-06334-MCS-MAA, 2021 WL 1398967, at *2 (C.D. Cal. Apr. 6, 2021).  Commonality requires

11   there to be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Such

12   common questions of law and fact must predominate over individual questions.  Fed. R. Civ. P.

13   23(b)(3).  Commonality exists when class members' claims depend upon a common contention

14   that is "capable of classwide resolution — which means that determination of its truth or falsity

15   will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-*

16   *Mart Stores, Inc. v. Dukes* (*Dukes*), 564 U.S. 338, 350 (2011).  The predominance inquiry

17   assesses whether the proposed class is "sufficiently cohesive to warrant adjudication by

18   representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common

19   questions present a significant aspect of the case and they can be resolved for all members of the

20   class in a single adjudication, there is clear justification for handling the dispute on a

21   representative rather than on an individual basis."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

22   1022 (9th Cir. 1998), *overruled in part on other grounds by Castillo v. Bank of America, NA*, 980

23   F.3d 723 (9th Cir. 2020) (citation omitted).  "An individual question is one where members of a

24   proposed class will need to present evidence that varies from member to member, while a

25   common question is one where the same evidence will suffice for each member to make a prima

26   facie showing or the issue is susceptible to generalized, class-wide proof."  *Tyson Foods, Inc. v.*

27   *Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation, alterations, and internal quotation marks

28   omitted).  The Court will therefore evaluate the elements of commonality and predominance

4

together.  Because the Court finds that Plaintiff fails to establish commonality under Rule 23(a) and predominance under 23(b)(3), it declines to address the parties' arguments with respect to the remaining requirements under Rule 23(a) and 23(b)(3).

Plaintiff argues with respect to commonality under Rule 23(a) that the class seeks common answers to questions of law and fact based on Defendant's practice of charging unlawful convenience fees that were not authorized by underlying mortgage documents and contracts. (ECF No. 51 at 15–16.)  Plaintiff states that "[s]uch common questions include[:] whether Defendant systematically imposed fees upon its customers; whether those fees violated the FDCPA and Rosenthal Act; and whether Plaintiff and members of the [c]lasses are entitled to damages as a result."  (*Id.* at 16.)  Plaintiff argues with respect to predominance under Rule 23(b)(3), the question is "whether the fees that [Defendant] charged, of which it retained the vast majority, violate the FDCPA and Rosenthal Act."  (*Id.* at 21.)  Plaintiff contends the foregoing is "a single clear and unified theory of liability" stemming from Defendant's conduct.  (*Id.*)

In opposition, Defendant addresses commonality and predominance together, and argues the proposed classes "would plunge this Court into detailed fact-finding and legal analysis for each borrower" because the case is replete with the following individualized questions: (1) whether class members are in default; (2) whether class members individual mortgage agreements or modifications authorize the fee; (3) whether class members have "notice-and-cure" provisions; and (4) whether class members have settled claims through other proceedings such that the defenses of waiver, estoppel, and res judicata will apply.  (ECF No. 54 at 5–11.)  The Court will examine each of Defendant's arguments in turn.

A.    Whether a Class Member's Loan is "In Default"

Defendant notes "[t]he FDCPA circumscribes only the conduct of professional 'debt-collectors'" that does not include a mortgage servicing company, but "[a] narrow exception applies . . . if a mortgage servicer collects payments from a borrower whose account is 'in default' when the servicer acquired the account."  (ECF No. 54 at 6 (internal citations omitted).)  Defendant contends determining whether a class member's loan was "in default" when acquired requires a case-by-case analysis of "the language of the original agreement, applicable state law

1   and federal regulations, any subsequent agreements between the borrower and the loan servicer,

2   and the loan servicer's internal policies." (*Id.*)  Defendant argues many members of the proposed

3   class that are not "current" under Plaintiff's proposed class definition cannot be labeled as "in

4   default." (*Id.* at 7.)

5   In reply, Plaintiff argues the FDCPA's requirement that the loan be in default does not

6   defeat a finding of commonality and predominance, as Defendant has already provided a

7   spreadsheet of customers' loans which were acquired in default.  (ECF No. 56 at 9; *see* ECF No.

8   52.)  Plaintiff contends Defendant has cited no case nor is it aware of any FDCPA case in which

9   class certification was denied "because the [c]ourt must determine whether the class members'

10  loans were in default when acquired."  (ECF No. 56 at 9.)  Plaintiff points to cases from the

11  Eastern District and Northern District to demonstrate that similar classes have been certified

12  under the FDCPA.  (*Id.* at 6 (citing *Schwarm v. Craighead*, 233 F.R.D. 655, 660–664 (E.D. Cal.

13  2006); *Gold v. Midland Credit Mgmt. Inc.*, 306 F.R.D. 623, 635 (N.D. Cal. 2014); *Abels v. JBC L.*

14  *Grp., P.C.*, 227 F.R.D. 541, 549 (N.D. Cal. 2005)).)

15  The Court finds, however, that Plaintiff's reliance on the aforementioned cases is

16  unavailing.  In said cases, the court certified classes of members who had been sent an unlawful

17  letter in violation of the FDCPA.  *See Schwarm*, 233 F.R.D. at 661; *Gold*, 306 F.R.D. at 631;

18  *Abels*, 227 F.R.D. at 544–45.  In *Schwarm*, for example, "the only significant individual questions

19  . . . relate to the identification of the individual class member, whether the individual class

20  member paid 'collection fees,' and whether the individual paid those fees in reliance on

21  defendants' alleged misrepresentation."  *Schwarm*, 233 F.R.D. at 663.  The court found such

22  questions did not bar predominance because the common questions "can be resolved for all

23  members in a single adjudication."  *Id.*  Here, a detailed analysis is required to determine whether

24  a putative class member's loan was in default — a far more complicated analysis which is not

25  easily resolved.  The spreadsheet Plaintiff touts as evidence of Defendant's records does not

26  "differentiate borrowers who were current on forbearance plans when their loans transferred to

27  [Defendant], borrowers who paid convenience fees after their delinquent loans were brought

28  current, or borrowers whose accounts were not current but not 'in default.'"  (*See* ECF No. 52;

6

1  *see also* ECF No. 54 at 7.)

2        Based on the foregoing, the Court agrees with Defendant that the FDCPA only applies if

3  Defendant acquired payments from a borrower whose account is "in default." (*See* ECF No. 54 at

4  6.)  Because it cannot be easily determined whether individual accounts are "in default" — an

5  element of the claim — it cannot be easily determined whether the FDCPA applies to each

6  transaction.  "Where, as here, individual inquiries are required to prove a core element of liability,

7  courts have found that individual questions predominate over common questions." *True Health*

8  *Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2021 WL 4818945, at *3 (N.D.

9  Cal. Oct. 15, 2021); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 644 (N.D. Cal. 2021) (denying class

10  certification where plaintiff lacked common proof of "essential elements" of the claim).

11  Therefore, this individualized issue weighs against a finding of predominance and commonality.

12        B.      Whether Individual Agreements or Modifications Authorize the Fee

13        Defendant states that it services a variety of loans from different mortgage originators, so

14  "different forms underlie borrowers' loans." (ECF No. 54 at 8.)  Defendant argues Plaintiff

15  provides no evidence the underlying mortgage agreements of putative class members used a

16  standard form or have any similarities, and therefore certification "would require unearthing and

17  scrutinizing the account file for each contract to determine whether that particular form authorizes

18  convenience fees." (*Id.*)  The FDCPA (and, by extension, the Rosenthal Act) permits collection

19  of fees "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.

20  § 1692f(1).

21        In reply, Plaintiff argues Defendant does not cite, nor can Plaintiff find, a case in which a

22  mortgage servicer has presented a loan agreement which specifically authorized convenience

23  fees. (ECF No. 56 at 6.)  Plaintiff contends "if any of the class's loan documents contained such

24  a provision, [Defendant] would have submitted a declaration or other evidence to that effect" and

25  this inquiry requires "a simple yes/no check from Defendant's records." (*Id.* at 10.)

26        In *Morandi*, the plaintiffs sought to certify a class of those who were improperly charged a

27  convenience fee for mortgage payments made by phone.  2021 WL 1398967, at *1.  The common

28  question hinged on whether the underlying loan agreements authorized such a fee, which is

1    identical to the question herein. *Id.* at *4. The defendants provided the court with one security

2    instrument as an example to illustrate that this question "must be adjudged for each species of

3    agreement" and the court found the record did not indicate how many different types of

4    agreements exist among class members nor did the parties show substantive variations among

5    these agreements. *Id.* The plaintiff did not provide the court with information about how many

6    underlying mortgage agreements required examination, or evidence that no mortgage agreement

7    expressly authorizes such fees. *Id.* Instead, the plaintiffs' counsel "stated they had 'never seen a

8    mortgage agreement specifically authorizing these types of fees,' in this case or any other." *Id.*

9    Thus, the court held the individualized question weighed against a finding of predominance and

10   denied the plaintiffs' certification motion. *See id.*

11          In the instant case, Plaintiff does not present the Court with any information as to how

12   many types of underlying mortgage agreements must be examined, let alone any evidence

13   substantiating their claim that no mortgage agreement expressly authorizes the convenience fee.

14   Defendant services mortgages from numerous mortgage originators with different mortgage

15   agreements. (ECF No. 54 at 8.) As the parties' briefs show, this inquiry requires intense factual

16   determinations concerning loan agreements which a "simple yes/no" answer would not satisfy.

17   Plaintiff bears the burden of proof here. *See Dukes*, 564 U.S. at 350. As in *Morandi*, "without a

18   further showing, the Court cannot conclude that the question of whether class members' security

19   instruments expressly authorize the phone payment convenience fee may be resolved on a

20   common basis." *Morandi*, 2021 WL 1398967, at *4. Thus, this individualized issue weighs

21   against a finding of predominance and commonality.

22                    C.      "Notice-and-Cure" Provisions

23          Defendant argues many class members, unlike Plaintiff, have agreements with "notice-

24   and-cure" provisions which require the borrower to give written notice of a breach of the

25   agreement and provide the lender an opportunity to cure prior to filing a lawsuit. (ECF No. 54 at

26   8.) Defendant contends that before this Court could adjudicate the FDCPA and Rosenthal Act

27   claims on the merits, it would "need to conduct detailed fact-finding about each putative class

28   member's eligibility to proceed under his or her individual contract." (*Id.*) Defendant maintains

1  the Court would need to determine the following: "(1) which class members had agreements with

2  notice-and-cure requirements; (2) whether those class members gave notice to [Defendant] in

3  accordance with the specific requirements of the originating document (or any amendment); and

4  (3) whether [Defendant] failed to cure the complained of action (under the terms of the specific

5  document)." (*Id.* at 9.)  In reply, Plaintiff argues a "notice-and-cure" provision is not relevant

6  when the borrower's claim has an independent basis in statute, such as the FDCPA and Rosenthal

7  Act, instead of the contract.  (ECF No. 56 at 11–12.)

8         The Court finds Plaintiff's argument persuasive.  Plaintiff is challenging a fee that was

9  allegedly not specified in his loan agreement, so the mortgage lender's attempts to impose the

10  fees were clearly not "actions pursuant to" the agreements.  *McShannock v. JP Morgan Chase*

11  *Bank N.A.*, 354 F. Supp. 3d 1063, 1071–72 (N.D. Cal. 2018), *reversed and remanded on other*

12  *grounds*, 976 F.3d 881 (9th Cir. 2020) (citing *Gerber v. First Horizon Home Loans Corp.*, No.

13  C05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006) (an action alleging practices

14  independent of those between the parties does not require notice).  Thus, the "notice-and-cure"

15  provisions do not impact a class member's ability to bring the claim, even if their agreement

16  contained the provision.  *McShannock*, 354 F. Supp. 3d at 1071.  However, Plaintiff presents the

17  Court with limited information about the diversity of loan agreements in the proposed class.  As

18  such, "the parties' dispute as to the named plaintiff['s] notice-and-cure provision indicates that

19  the parties will need to engage in similar colloquies for every species of notice-and-cure provision

20  in class members' [loan agreements]." *Morandi*, 2021 WL 1398967, at *5.  Therefore, the Court

21  finds this individualized issue weighs against a finding of predominance and commonality.

22                  D.  Other Proceedings and Defenses

23         Defendant argues many putative class members have settled their claims through

24  foreclosure, bankruptcy, and other proceedings such that defenses related to waiver, estoppel, and

25  res judicata would apply.  (ECF No. 54 at 9.)  In reply, Plaintiff argues Defendant fails to cite a

26  case demonstrating that such a hypothetical situation defeats class certification.  (ECF No. 56 at

27  12.)  Plaintiff contends "that most certified classes contain at least a few members who would be

28  barred from participating because they settled or discharged their individual claims." (*Id.*)

The Court is unpersuaded by Defendant's proposed defenses as they are "no more than cursory hypotheticals" which, even if they applied to some class members, would not bar certification "as more important questions predominate." *Tortliatt v. Ocwen Loan Servicing, LLC*, No. 19-cv-04303-WHO, 2021 WL 5230755, at *9 (N.D. Cal. Nov. 8, 2021) (quoting *Tyson Foods, Inc.*, 577 U.S. at 453). Therefore, this issue weighs in favor of a finding of predominance and commonality.

In conclusion, the Court finds Plaintiff has not met the commonality or predominance requirement under Rule 23(a) and Rule 23(b)(3), respectively, "[b]ecause individual permutations of fact and law predominate and would overwhelm any common question." (ECF No. 54 at 2.) Plaintiff does not provide any reasonable solution to resolve these questions, other than to examine Defendant's records for each of the potentially tens of thousands of class members. *See Morandi*, 2021 WL 1398967, at *4 (denying class certification where the plaintiff failed to provide evidence that class members' agreements did not authorize convenience fees); *Tortliatt*, 2021 WL 5230755, at *9 ("[A]ll a plaintiff must do at class certification is present a likely method for determining class damages."). Therefore, the Court denies class certification of both classes because Plaintiff has not provided a likely method for determining: (1) whether class members are in default; (2) whether class members' individual mortgage agreements or modifications authorize the fee; and (3) whether class members have "notice-and-cure" provisions. (ECF No. 54 at 5–11.) "The predominance inquiry is dispositive, so the Court declines to address the other requirements of Rule 23." *Morandi*, 2021 WL 1398967, at *6.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Certify Class. (ECF No. 50).

IT IS SO ORDERED.

**DATED:** March 25, 2022

Troy L. Nunley
United States District Judge